693 S.E.2d 38

**STATE of West Virginia, Plaintiff
Below, Appellee**

v.

**Raymond Lee ELSWICK, Defendant
Below, Appellant.**

**No. 35014.**

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 10, 2010.

Decided April 1, 2010.

Morgan B. Hayes, Lee F. Benford, II, Ripley, WV, for the Appellant.

R. Christopher Smith, Attorney General's Office, Charleston, WV, for the Appellee.

PER CURIAM:

This is an appeal by Raymond Elswick (hereinafter "Appellant") from a December 29, 2008, order of the Circuit Court of Roane County sentencing the Appellant to a term of life in the State penitentiary due to two previous felony convictions and a July 11, 2008, Roane County jury verdict of guilty of one count of voluntary manslaughter, as a lesser included offense, and one count of conspiracy. The Appellant asserts multiple assignments of error. Upon thorough review of the arguments of the parties, the record, and applicable precedent, this Court affirms the decisions made by the Circuit Court of Roane County on these issues.

## I. Factual and Procedural History

According to the evidence presented at trial, the Appellant went to the home of Joey and Crystal Hicks in Spencer, West Virginia, to perform repair and renovation work on May 26, 2005. While the Appellant was present in the home, Mrs. Hicks discovered Daniel Lee Burns, age 51, molesting[1] her nine-year-old daughter. Mrs. Hicks alerted her husband and the Appellant of Mr. Burns' actions, and the Appellant thereafter joined Mr. and Mrs. Hicks in beating Mr. Burns, kicking him repeatedly, and forcibly removing him from the home to the front porch. The beating of Mr. Burns continued on the porch, as witnessed by neighbors. The Appellant, Mr. Hicks, and Mrs. Hicks beat Mr. Burns on the front lawn and eventually placed Mr. Burns in a vehicle.

When police officers arrived, having been summoned by concerned neighbors, the Appellant and Mr. and Mrs. Hicks informed the officers that Mr. Burns had departed the premises. Retaining Mr. Burns in the vehicle, the Appellant, Mr. Hicks, and Mrs. Hicks drove him to a secluded area, continuing to strike him throughout that trip. When they stopped the vehicle in a wooded area, they removed Mr. Burns' finger with a knife and cauterized it with a lighter to stop the bleeding. When Mr. Burns no longer responded

---

1. Mr. Burns was allegedly placing his hands in- side the daughter's shirt and into her pants.

to the beatings, they placed him back in the vehicle and thereafter discovered that he had died. They removed his body from the vehicle and placed it in a creek. An autopsy later revealed that Mr. Burns had died of blunt force trauma.

On September 27, 2005, the Appellant was indicted for the crimes of murder, felony murder, kidnaping, and conspiracy. The extensive series of delays ensuing thereafter during the progress of this prosecution form the primary basis for this appeal. For example, on October 21, 2005, the State moved to continue due to DNA testing delays. On October 24, 2005, the Appellant moved to continue to permit time for competency testing. Another continuance was requested by the State on March 24, 2006, due to the fact that scientific testing results had not been received. On May 25, 2006, in response to the State's late disclosure of DNA evidence, scientific evidence, and footprint analysis, the Appellant moved to continue. Again on September 26, 2006, the State made a late disclosure of several new items of evidence, constituting the State's fourteenth supplemental disclosure and including such items as a blood identification report, DNA report, and footwear comparison report.

A fifteenth supplemental disclosure by the State on October 2, 2006, necessitated yet another continuance request by the Appellant. On the morning of scheduled trial on February 20, 2007, the State disclosed a Crime Scene Report dated July 7, 2005, as well as fifty photographs of the crime scene. In response, the Appellant again moved for a continuance based upon this late disclosure by the State.

The Appellant's first trial finally began on April 24, 2007. A mistrial was ultimately declared in that trial due to the prosecutor's remark during closing argument. Specifically, the prosecutor raised his hand, motioned toward the Appellant, and said, "I can't call Mr. Elswick as a witness, he has a right to remain silent. . . ." The trial court concluded that this statement constituted an indirect and unintentional reference to the fact that the Appellant had not testified during trial and therefore granted a mistrial. The Appellant thereafter moved to prohibit retrial based upon double jeopardy principles. In response to the Appellant's motion, the trial court held a hearing on July 20, 2007, and heard the testimony of the prosecutor regarding the remark that resulted in the mistrial, as more fully developed below. The trial court found that the prosecutor did not intentionally provoke the mistrial and denied the Appellant's motion to prohibit retrial.

Trial was rescheduled for June 24, 2007. However, on the day of that rescheduled trial, the Appellant moved to continue based upon recent discovery of a possible witness named John Richards. Mr. Richards had shared a jail cell with Mr. Hicks, and his statement regarding certain evidence had been taken by the Calhoun County prosecutor and faxed to the Roane County prosecutor in 2005. Mr. Richards had indicated that Mr. Hicks had a knife and a lighter in his possession when he was arrested and jailed. The Calhoun County prosecutor had entered into a plea agreement with Mr. Richards to reduce his unrelated felony charge to a misdemeanor in exchange for his testimony in the Appellant's case.

On July 25, 2007, the State submitted its twenty-fourth supplemental disclosure, including information about the lighter and knife used in the crime and thereafter allegedly in Joey Hicks' possession. By November 5, 2007, the State revealed that blood had been found on the lighter and that DNA testing continued in preparation for trial. Thus, the trial was continued to December 10, 2007. The lighter was thereafter provided to the Appellant's expert for testing in January 2008.

On January 9, 2008, the Appellant filed a motion to compel and also requested sanctions, arguing that numerous items had not been properly forwarded to the Appellant's expert. A Rule to Show Cause was issued against the State Police Lab, but the trial court found that substantial compliance was ultimately demonstrated. The Appellants' Motion to Dismiss for Ongoing Discovery Violations and Motion to Dismiss for Failure to Supply Speedy Trial were also denied. The Appellant also moved for a continuance in March 2008 to permit time to complete forensic testing.

The Appellant's trial was conducted in July 2008, the ninth term of court after his indictment. He was found guilty of voluntary manslaughter, as a lesser included offense, and one count of conspiracy. On January 8, 2009, he was sentenced to life in prison based upon recidivist information. He now appeals to this Court.

## II. Standard of Review

■ The standard of review generally applicable to findings of a trial court was explained as follows in syllabus point three of *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000):

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

■ One of the critical issues raised in this case involves whether the trial court should have dismissed the indictment for various reasons asserted by the Appellant. The specific standard of review applicable to the assignments of error involving the trial court's denial of the Appellant's motions to dismiss the indictment was explained in syllabus point one of *State v. Grimes,* —— W.Va. ——, —— S.E.2d —— (2009), as follows:

This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo.* However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.

The Appellant has asserted numerous other assignments of error involving various legal principles and corresponding differing standards of review. Thus, in addition to the standards set forth above, any additional specific standards of review will be discussed separately as this Court addresses each of the Appellant's assignments of error below.

## III. Discussion

### A. Double Jeopardy

■ The Appellant alleges that the trial court erred by denying his July 20, 2007, motion to dismiss the indictment on double jeopardy grounds and his July 8, 2008, renewed motion to dismiss the indictment on the same grounds. The Appellant asserts that retrial was barred by double jeopardy principles after the mistrial was declared due to the prosecutor's comments regarding the Appellant's failure to testify. This Court has explained as follows in syllabus point eight of *State v. Pennington,* 179 W.Va. 139, 365 S.E.2d 803 (1987): "When a mistrial is granted on motion of the defendant, unless the defendant was provoked into moving for the mistrial because of prosecutorial or judicial conduct, a retrial may not be barred on the basis of jeopardy principles. *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416, 427 (1982)." This Court has further explained that an inquiry is required into the intent of the prosecutor in making the reference to failure to testify. Specifically, in syllabus point two of *State ex rel. Bass v. Abbot,* 180 W.Va. 119, 375 S.E.2d 590 (1988), this Court observed: "The determination of 'intention' in the test for the application of double jeopardy when a defendant successfully moves for a mistrial is a question of fact, and the trial court's finding on this factual issue will not be set aside unless it is clearly wrong."

The United States Supreme Court, in *Kennedy,* explained that "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." 456 U.S. at 675–76, 102 S.Ct. 2083.

Likewise, in *Wassall v. Ryan,* 705 F.2d 970 (8th Cir.1983), the Eighth Circuit Court of Appeals held as follows:

Where a defendant successfully moves for a mistrial, the Double Jeopardy Clause generally does not bar reprosecution, even if the motion for a mistrial is necessitated by prosecutorial error. However, retrial is

barred where the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id.* at 971 (citations omitted).

The Appellant also directs this Court's attention to *Anderson v. Georgia*, 285 Ga.App. 166, 645 S.E.2d 647 (2007), a Georgia Court of Appeals case dealing with a bar of retrial based on double jeopardy grounds. In *Anderson*, retrial was barred where the prosecutor introduced documentary evidence at trial that indicated that the defendant had exercised his right to remain silent upon request. The *Anderson* court found that the prosecutorial action was so extremely blatant and that the prosecutor must have intended for a mistrial to result from his conduct. *Id.* at 648–49.

■ In the case sub judice, the trial court conducted a July 20, 2007, hearing on the Appellant's motion to dismiss the indictment on double jeopardy principles. During this hearing, the prosecutor, Mark Sergent, testified regarding the remark that resulted in the mistrial. He stated that the remark was made in an attempt to explain why Mr. and Mrs. Hicks, co-defendants, had been called as witnesses. He further explained that he had inadvertently made the statement in question. He testified that he "did not purposefully make a statement to cause a mistrial." He stated: "The State's evidence was in, in its entirety. The jury, a qualified panel of jurors was here, heard the entire case, there was no reason for me to throw a jury."

In denying the Appellant's motion to dismiss the indictment, the trial court explained that while the remark did indeed constitute reversible error by the State, there was no evil intent, no motivation to harass or prejudice the Appellant, and no bad faith. The trial court therefore found that double jeopardy would not bar retrial because the prosecutor's statements were not made in an intentional attempt to provoke a mistrial.

Based upon this Court's review, we find no error by the trial court in refusing to bar the Appellant's retrial. The evidence does not suggest the existence of a blatant remark designed to instigate the granting of a mistrial. Rather, in this case, the evidence compels the conclusion that the remark in question was an inadvertent reference to the Appellant's failure to testify. It properly resulted in a mistrial, but it was not of the nature to justify a double jeopardy prohibition of retrial of the Appellant. The trial court committed no error in this regard.

### B. Prosecutorial Misconduct

■ The Appellant also contends that the prosecutor engaged in misconduct by failing to immediately disclose the plea agreement with John Richards in a Calhoun County case and Mr. Richards' statement,[2] allegedly to be used as impeachment evidence against Mr. Hicks if Mr. Hicks' testimony had been introduced. In response to the revelation of the existence of the plea agreement and the surrounding circumstances, the trial court granted the Appellant's motion to continue the trial. The trial court, however, denied the Appellant's motion to dismiss the indict-

2. The Appellant filed a motion to dismiss the indictment on the basis of prosecutorial misconduct due to the existence of a statement of John Richards provided by Mr. Richards as part of a plea agreement in Calhoun County. Mr. Richards' statement was premised on conversations he allegedly had with Joey Hicks while they were cell mates and Mr. Richards' knowledge of the fact that Mr. Hicks had a knife and lighter in his possession when he was arrested in May 2005. As the trial court observed, this evidence would have been considered impeachment evidence and would have been probative only to the weight and credibility to be afforded to the testimony of Mr. Hicks with regard to the utilization of the knife and lighter during the crime and with regard to alleged inconsistent statements of Mr. Hicks regarding the circumstances surrounding the beating of Mr. Burns. Mr. Hicks testified in the Appellant's first trial, ending in a mistrial as noted above. However, Mr. Hicks did not testify in the Appellant's second trial, ending in a conviction and being appealed herein.

In the hearing on the Appellant's motion to dismiss the indictment based upon the late revelation of the Richards statement, it was discovered that a copy of the Richards statement was faxed from the Calhoun County Prosecutor's Office to the Roane County Prosecutor's Office in 2005. On the day of the scheduled trial, July 24, 2007, the Appellant informed the trial court that he had learned of the Richards statement through the Calhoun County Prosecutor's Office. In response, the trial court granted the Appellant's motion to continue the trial until November 27, 2007.

ment on this basis, ruling that Rule 16(d)(2) of the West Virginia Rules of Criminal Procedure [3] provides that the granting of a continuance is an appropriate remedy for discovery violations, within the discretion of the trial court.

■ In response to the Appellant's allegations on appeal, the State maintains that the prosecutor had no knowledge of the existence of the John Richards statement or a plea agreement during the period of nondisclosure. Moreover, any potential disadvantage occasioned by the late revelation of this matter was rectified by the granting of a continuance by the trial court. As this Court has instructed, "[t]he preferred relief where the party responsible for the violation [nondisclosure] has not acted in bad faith is to grant the defendant a continuance giving him or her an opportunity to prepare for trial once the discovery materials have been made available." *State ex rel. Rusen v. Hill,* 193 W.Va. 133, 140, 454 S.E.2d 427, 434 (1994).

Our cases and the West Virginia Rules of Evidence have declared an implicit preference for a continuance when there has been a discovery violation. *See* W.Va. R.Evid. 403 ("unfair surprise" is not listed as a ground for exclusion). *See State v. Barker,* 169 W.Va. 620, 623, 289 S.E.2d 207, 210 (1982) ("[e]ven if this were a 'proper' case in which to claim surprise, the appellant failed to move for a continuance, and, therefore, waived his right to one"); *Martin v. Smith,* 190 W.Va. 286, 291, 438 S.E.2d 318, 323 (1993) ("even given that the admission of Dr. Adams' testimony prejudiced Dr. Smith's case, we find such prejudice far from incurable. Dr. Smith could have easily moved for a con-

tinuance in order to secure a comparable expert witness").

*Id.* at 141, 454 S.E.2d at 435.

During the motion hearing, the prosecutor, Mr. Sergent, testified that he did not recall receiving a faxed copy of the Richards statement or any accompanying letter from the Calhoun County Prosecutor's Office. Mr. Sergent testified that he had been out of town when the fax arrived at the office and had not received it personally. He further explained that a clerk had been terminated for failing to follow required protocol regarding the handling of faxes received in the prosecutor's office. He stated that he had reviewed his entire file in this case and had not located the fax in question.

At the conclusion of the hearing, the trial court ruled that it was unable to find, based on a preponderance of the evidence, that Mr. Sergent had actual knowledge of the Richards statement sent from the Calhoun County Prosecuting Attorney's Office until he was informed of its existence by the Appellant's counsel on July 23, 2007. In the October 12, 2007, order denying the motion to dismiss the indictment, the trial court further explained that Mr. Hicks' testimony was impeached by prior inconsistent statements made to law enforcement officers, as well as by testimony from his wife, Crystal Hicks, during the initial trial. The trial court opined that during the initial trial, ending in a mistrial, Mr. Hicks' testimony was "so utterly discredited that the question arose why the prosecutor even bothered calling him as a witness." [4]

The trial court ultimately ruled that the appropriate response to the revelation of the Richards statement was to grant a continuance to permit

---

**3.** West Virginia Rule of Criminal Procedure 16(d)(2) provides as follows:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspec-

tion and may prescribe such terms and conditions as are just.

**4.** Mr. and Mrs. Hicks, alleged accomplices of the Appellant, entered into plea agreements. Mr. Hicks pleaded guilty to voluntary manslaughter and conspiracy to commit a felony of voluntary manslaughter. Mrs. Hicks pleaded guilty to involuntary manslaughter; conspiracy to commit a felony of malicious wounding; and conspiracy to commit a felony of kidnaping.

the defense the ability to investigate all circumstances surrounding John Manis Richards and made a determination as to whether he should be presented as a witness for the defense. So, except for the delay in the second trial, any prejudice caused by nondisclosure has been ameliorated by the court continuing the trial until November, 2007.

Upon review by this Court, we find that the trial court's selection of a continuance as the appropriate resolution of this matter was not erroneous. A continuance was granted to allow development of the issues surrounding what the trial court correctly termed "marginally material" evidence of Mr. Richards' reference to Mr. Hicks' possession of a lighter and knife when he was arrested in May 2005. This Court declines to disturb the trial court's method of handling this issue.

### C. Alleged Discovery Violations

The Appellant also includes an assignment of error generally asserting that the trial court erred in its denial of the Appellant's motion to dismiss the indictment for numerous and ongoing discovery violations. In arguing this assignment of error, the Appellant simply includes four quotes from prior cases of this Court regarding remedies for discovery violations. No other arguments or explanations applying that law to the particular facts or circumstances of this case are presented by the Appellant in this assignment of error.

As the State contends, the Appellant's argument on this assignment of error does not provide any legal or factual reasoning regarding the alleged insufficiencies in the trial

court's decision to grant a continuance under the circumstances. This Court recognized in *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." 196 W.Va. at 302, 470 S.E.2d at 621; *see also State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal"). We find no merit in the Appellant's assertion in this assignment of error.

### D. Violation of Sixth Amendment Right to Speedy Trial

The Appellant also asserts that his Sixth Amendment right to a speedy trial was violated by the delay between his indictment on September 27, 2005, and his trial on July 8, 2008. Our inquiry into alleged speedy trial violations is guided by syllabus point two of *State v. Carrico*, 189 W.Va. 40, 427 S.E.2d 474 (1993), explaining that once the indictment has been returned, " '[i]t is the three-term rule, W.Va.Code, 62–3–21 [1959], which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution.' Syl. Pt. 1, *Good v. Handlan*, 176 W.Va. 145, 342 S.E.2d 111 (1986)." West Virginia Code § 62–3–21 (1959) (Repl. Vol. 2005) essentially provides that an individual indicted for a crime must be tried within three terms of the indictment.[5]

---

5. The complete text of West Virginia Code § 62–3–21 is as follows:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear accord-

ing to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace [magistrate], city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from further prosecution for the offense set forth in the warrant against him, if after his having appealed such conviction and sentence, there be three regular terms of such court without a trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment.

 This Court recently addressed allegations of a violation of Sixth Amendment rights in *State v. Jessie,* 225 W.Va. 21, 689 S.E.2d 21 (2009). In *Jessie,* this Court reiterated that the methodology for assessing such allegations was clearly established by this Court in *State v. Foddrell,* 171 W.Va. 54, 297 S.E.2d 829 (1982), utilizing the guidance of the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[6] *See also State v. Cox,* 162 W.Va. 915, 253 S.E.2d 517 (1979) (identifying the *Barker* factors). In syllabus point two of *Foddrell,* this Court explained the applicable standard as follows:

A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial.

In *Foddrell,* this Court utilized the standard enunciated above and concluded that a delay of almost six years between the indictment and the trial was not caused by neglect on the part of the investigating officers. The defendant in *Foddrell* had not demonstrated that he was prejudiced by the delay, and this Court reasoned that "[t]here was no showing that the deceased witness [having died during the period of delay] would have testified

or what exactly her testimony would have been had she testified. Even if we assume that her testimony would have supported the appellant's assertions at trial, there was no showing that such testimony was critical to the appellant's defense at trial." 171 W.Va. at 58, 297 S.E.2d at 833.

 In the case sub judice, the trial court denied the Appellant's motion to dismiss the indictment on Sixth Amendment grounds and presented an extremely thorough evaluation of the factors identified in *Foddrell* and *Barker.* The trial court also addressed the Appellant's assertion that delays by the State forced him to request continuances beyond the statutorily-required three terms.[7] The trial court observed that many motions by the Appellant were precipitated by late production of discoverable material such as delayed production of forensic testing results by the State Crime Lab and the failure of the State Police to deliver the crime report and photographs in a timely manner. However, the trial court found that the reasons for delay were not exclusively attributable to the State and that some delays were to the Appellant's benefit in the form of further forensic investigations, obtaining favorable expert testimony, and further development of exculpatory information.

The trial court did not find any indication of a deliberate or intentional delay by the State. The record does not reveal any instance of wilful or calculated postponement by the State for the purpose of tactical advantage or otherwise. Nor does the record reveal any intentional retention of materials requested by the Appellant. The trial court

---

6. In *Barker,* the United States Supreme Court explained that the circumstances of each case would dictate the outcome and stated as follows:

A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. 2182. It is worth noting that in *Barker,* the United States Supreme Court found no speedy trial violation where a five-and-one-half year delay occurred with all but

seven months attributable to the government, where the defendant did not assert such a right until the day of trial, and no actual prejudice was found. *Id.* at 532, 92 S.Ct. 2182.

7. Syllabus point three of *State v. Fender,* 165 W.Va. 440, 268 S.E.2d 120 (1980), explained as follows: " 'Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62–3–21, as amended.' Syl. pt. 2, *State ex rel. Spadafore v. Fox,* 155 W.Va. 674, 186 S.E.2d 833 (1972)."

also properly emphasized the fourth prong of the *Foddrell* analysis in evaluating this matter. Specifically, prejudice to the Appellant, other than the months of waiting for trial, was found to be virtually non-existent.

This Court has reviewed the circumstances surrounding the multiple instances of delay, as revealed in the record and summarized above in the factual recitation. We find no error by the trial court in refusing to dismiss the indictment based upon the periods of delay. The reasons for each of the delays were addressed by the trial court, and the remedy for such delays was appropriately determined to be the granting of a continuance in each instance. Based upon our review, we find that neither a violation of West Virginia Code § 62–3–21 nor a violation of the speedy trial constitutional protection has occurred in this case.

### E. State's Destruction of Evidence

▆ The Appellant also contends that the State destroyed certain materials, including some pieces of white paper with phone numbers and some photographs believed to be the property of the Appellant. These items had been in the possession of Ms. Debra Stewart, Mr. Hicks' mother, and had been obtained by the police when they went to Ms. Stewart's home to retrieve the knife and lighter believed to have been used in the commission of the crime.[8] On December 13, 2007, the Appellant filed a motion to dismiss the indictment on the basis of this destruction of evidence, and a hearing was thereafter conducted by the trial court.

During the hearing, State Trooper Don Kitzmiller testified that these items had been discarded because they lacked evidentiary value. Subsequent to argument of the defense counsel that the case should be dismissed based upon the State's improper destruction of evidence, the trial court inquired regarding the "possible relevance of the items seized that were thrown away or destroyed by Sergeant Kitzmiller."[9] Counsel for the Appellant responded to the trial court's question and explained that he did not have knowledge regarding exactly what those photographs or pieces of paper regarded. The trial court then questioned the efficacy of dismissing a murder indictment even though defense counsel could not identify any evidentiary value in the pieces of white paper or photographs. The trial court ultimately concluded that the Appellant's defense had not been affected or prejudiced in any manner by the destruction of the contents of that plastic bag.

▆ The trial court found no evidentiary value in the destroyed materials and found no evidence that inculpatory or exculpatory evidence was included. In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court expressed the principle that suppression by the State of evidence favorable to an accused is violative of due process if the evidence is deemed material to the accused's guilt or punishment. 373 U.S. at 87, 83 S.Ct. 1194. Similarly, in syllabus point four of *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), this Court explained: "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." This Court addressed this issue subsequently in *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007), and observed that although *Brady* addressed only exculpatory evidence, the principle had ulti-

---

8. In the Appellant's motion to dismiss the indictment, he alleges that the State had taken possession of a "plastic bag containing the personal paperwork 'believed to be property of Raymond Elswick' " on August 30, 2007, when a knife and a lighter were also taken into the State's possession. The Appellant further alleges that the State ultimately admitted that certain paperwork had been discarded by the State. The Appellant requested the trial court to dismiss the case for this intentional disposal of those materials.

9. Ms. Stewart thought the plastic bag contained a wallet, pieces of paper, and photographs of dogs and people, but two police officers testified that it contained only paper and photographs not relevant to the investigation. The property receipt also indicated that the bag contained only pieces of paper and photographs. The police officers further explained that they had gone to Ms. Stewart's home seeking only the knife and lighter in her possession. She had requested that they take the plastic bag since it contained items that did not belong to her or her son.

mately been expanded to include impeachment evidence. 221 W.Va. at 28, 650 S.E.2d at 127. The components of a due process violation under *Brady* were articulated as follows in syllabus point two of *Youngblood:*

> There are three components of a constitutional due process violation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982):(1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Suppressed evidence is considered material only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed. 221 W.Va. at 32, 650 S.E.2d at 131.

■ In pertinent part of syllabus point two of *State v. Osakalumi,* 194 W.Va. 758, 461 S.E.2d 504 (1995), this Court addressed the remedy to be selected by a trial court for violations of a duty to preserve evidence, as follows:

> In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

Upon review by this Court, we find no error in the trial court's refusal to dismiss the indictment on the basis of this destruction of evidence. The degree of negligence involved is minimal, to the extent that the police officer testified that the materials in question were of no value or relevance to the criminal investigation. Further, there is no indication that the materials were important to the investigation or that the result of the proceedings would have been different had those materials been available. The other evidence presented at trial was sufficient to support the jury's conviction of the Appellant. We find that this assignment of error is without merit.

### F. Theory of Defense Instruction

The Appellant also asserts that the trial court erred in failing to provide the Appellant's requested jury instruction on a particular component of his theory of defense. The requested jury instruction would have informed the jury of the Appellant's position that Mr. and Mrs. Hicks were providing false testimony regarding the Appellant's involvement in the crime in order to obtain a favorable plea bargain agreement. As the State emphasizes, a witness credibility instruction was properly provided to the jury, and any potential for false testimony could have been evaluated through the jury's application of that instruction to the testimony presented to them.

This Court has consistently held as follows with regard to the discretion of a trial court in providing jury instructions:

> The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

Syl. Pt. 6, *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995). Similarly, this Court held the following in *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), regarding jury instructions:

> The court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. The trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurate-

ly reflects the law. Deference is given to the [trial] court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

*Id.* at 671, 461 S.E.2d at 177, quoting *State v. Bradshaw*, 193 W.Va. 519, 543, 457 S.E.2d 456, 480 (1995).

Based upon the review of this Court, it appears that the instructions approved and provided to the jury by the trial court were precise, accurate, and fair to both parties. The instructions exhaustively defined the elements of the offenses charged in the indictment and specifically included a section dealing with witness credibility and the jury's function in weighing the evidence presented. This Court finds no abuse of discretion in the trial court's denial of the requested instruction.

### G. Battery as a Lesser Included Offense Instruction

■ The Appellant also contends that the trial court erred in failing to provide a jury instruction on battery as a lesser-included offense to murder.[10] This Court has observed that battery is not to be considered as a lesser included offense to murder. *State v. Watson*, 99 W.Va. 34, 127 S.E. 637 (1925). In *Watson*, this Court stated as follows:

[U]nder an indictment for murder, in the form prescribed by section 1, of chapter 144 of the Code, which indictment did not also aver facts constituting an assault or assault and battery, it was error in giving an instruction defining the offenses of which accused might be found guilty under the indictment, to tell the jury, if they did not find him guilty of the graver offenses covered by the indictment, they might find him guilty of assault and battery.

99 W.Va. at 36, 127 S.E. at 638. This Court also explained as follows in syllabus point two of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982): "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense,

then the defendant is not entitled to a lesser included offense instruction."

■ As stated above, the formulation of jury instructions is within the discretion of a trial court, and this Court will not disturb a trial court's findings absent an abuse of discretion. *Tennant*, 194 W.Va. at 102, 459 S.E.2d at 379, syl. pt. 6. The Appellant does not present any legitimate argument contesting the jury's finding that his actions contributed to the death of the victim or that there was insufficiency of evidence regarding the conviction for voluntary manslaughter. Nor does he present a legitimate argument requiring the inclusion of an instruction on battery as a lesser included offense. Accordingly, the trial court properly found that battery was not to be included when denying this offered instruction. We find no abuse of discretion on this issue.

### H. State's Motion to Continue During Recidivist Trial on December 9, 2008

■ The Appellant also asserts that the trial court erred in granting the State's motion to continue to the following day during the recidivist trial on December 9, 2008. The trial court permitted this recess to allow the State to call Lieutenant Michael Corsaro to bring in original fingerprint cards as evidence and testify regarding the same. In presenting the assignment of error on this issue, the Appellant again fails to provide any pertinent authority to support his claim. As explained above, "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *LaRock*, 196 W.Va. at 302, 470 S.E.2d at 621. Moreover, this Court has consistently held that "[a] motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syl. Pt. 2, *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979). A one-day

---

**10.** The Appellant was eventually convicted of voluntary manslaughter. According to the instruction to the jury, the jury was to convict the Appellant of voluntary manslaughter if it found beyond a reasonable doubt the following: 1) the Defendant, RAYMOND ELSWICK 2) in Roane County 3) on a day in May 2005 did unlawfully and intentionally 4) but without premeditation, deliberation, or malice, 5) kill and slay Daniel Bums.

delay to permit the calling of Lieutenant Corsaro to testify and to introduce original fingerprint cards does not give rise to an abuse of discretion on the part of the trial court. We therefore decline to reverse on this assignment of error.

### I. Juror Questionnaire

■ The Appellant also contends that the trial court erred in failing to permit a juror questionnaire to be distributed to the jurors during voir dire regarding qualifications to serve on the jury. The Appellant's motion for such questionnaire was made on February 23, 2007, and denied on March 27, 2007. The trial court concluded that written jury questionnaires are not necessary to seat a qualified, fair, and impartial jury.

■ This Court has stated that "[i]n a criminal case, the inquiry made of a jury on its voir dire is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused." Syl. Pt. 2, *State v. Beacraft*, 126 W.Va. 895, 30 S.E.2d 541 (1944), overruled in part on other grounds, Syl. Pt. 8, *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). There is no authority requiring a court to issue the requested juror questionnaire to jurors during voir dire, and there were no extenuating circumstances in this case which would have supported the use of such questionnaire. The Appellant's contention on this issue lacks merit, and this Court fails to discern any abuse of discretion by the trial court in this regard.

### J. Timeliness of Presentation of Recidivist Information

■ The jury rendered a verdict in this case on July 11, 2008. The State provided limited information regarding its intent to file a habitual criminal information on August 18, 2008, and actually filed an Information of Prior Felony Convictions on September 18, 2008. The Appellant contends that this delay violated West Virginia Code § 61–11–19 (1943) (Repl. Vol. 2005) [11] to the extent that the statute requires the State to "immediately" inform the court of a defendant's alleged

prior felony convictions. The trial court considered the Appellant's motion and entered an order denying the motion to dismiss the recidivist information on December 1, 2008. In its findings, the trial court stated that the Appellant was not deemed convicted until August 18, 2008, when his post-trial motions were denied and he was adjudged guilty. Further, the trial court found as follows:

> The obvious purpose of the statute is to require that the court be informed of the prior felonies of the Defendant before sentencing is imposed. The word "immediately" as appears in the statute must be considered not only with the word "upon conviction" but also the phrase "and before sentencing." It is apparent to the court that such information was given to the court immediately after conviction and before sentence by the representations made by the prosecutor on August 18, 2008.

The trial court's ruling in this regard is consistent with the prior statements of this Court. In *State ex rel. Appleby v. Recht*, 213 W.Va. 503, 583 S.E.2d 800 (2002), *cert. denied*, 539 U.S. 948, 123 S.Ct. 2618, 156 L.Ed.2d 638 (2003), for instance, this Court explained as follows:

> [T]he immediacy requirement is satisfied if the State files the information before sentencing and prior to the end of the term of court within which the defendant was convicted. To hold otherwise would risk a defendant being able to avoid imposition of a recidivist sentence if the State is unaware at the time of conviction of any predicate offenses. Such an inadvisable result would emasculate "[t]he primary purpose of our recidivist statutes, W.Va. Code, 61–11–18 (1943), and W.Va.Code, 61–11–19 (1943), [which] is to deter felony offenders, meaning persons who have been convicted and sentenced previously on a penitentiary offense, from committing subsequent felony offenses[,]" Syl. pt. 3, in part, *State v. Jones*, 187 W.Va. 600, 420 S.E.2d 736 (1992) and "to protect society from habitual criminals...." *State v. Stout*, 116 W.Va. 398, 402, 180 S.E. 443, 444 (1935).

**11.** West Virginia Code § 61–11–19 provides, in pertinent part, as follows: "It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentia-

ry of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence."

213 W.Va. at 510, 583 S.E.2d at 807. In the present case, the State ultimately filed the information on September 18, 2008, and the new term was set to begin on September 23, 2008. *See* Rule 2.05 of the West Virginia Trial Court Rules (stating that Fifth Circuit Term of Court begins on fourth Tuesday in September).

On appeal to this Court, the Appellant contends that the trial court should have granted his motion to dismiss the information of prior felony convictions due to this delay by the State. Based upon this Court's review, however, the State did not violate the statutory language. Limited information was provided as early as August 18, 2008, and the formal information was filed on September 18, 2008. We find no error in the trial court's denial of the Appellant's motion to dismiss.

### IV. Conclusion

Based upon the foregoing evaluation of the Appellant's assignments of error, this Court affirms the Circuit Court of Roane County.

Affirmed.