# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 13-1315** (Kanawha County 13-F-643)

**Clinton C. Simpson,**
**Defendant Below, Petitioner**

**FILED**

November 21, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Clinton C. Simpson, by counsel Jason D. Palmer, appeals his conviction of one count of arson in the first degree on the ground that the circuit court denied his motion to dismiss his indictment for failure to preserve evidence and his motion for a jury instruction on lost evidence. Petitioner was sentenced to twenty years in prison by order entered November 27, 2013. Respondent, the State of West Virginia, by counsel Laura Young, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Clinton C. Simpson was married; however, he and his wife lived in separate homes. His wife's home was located on Randolph Street in Charleston, West Virginia.

On the afternoon of June 21, 2012, petitioner was loitering near his wife's home. She asked him to leave, which he did, but he later returned. Eventually, petitioner and one of his wife's neighbors, Quinton Calwell, got into an argument with two other neighbors regarding an allegation that petitioner's wife was cheating on him.

Later that evening, petitioner and Mr. Calwell sat together for hours in petitioner's wife's yard and on Mr. Calwell's nearby porch where they talked, drank, and smoked cigarettes. Mr. Calwell later recalled giving petitioner several cigarettes which petitioner lit with his own lighter. At one point, petitioner said to Mr. Calwell, "You don't mess with another man's wife. I'll burn the mother-f---er up." Mr. Calwell thereafter saw petitioner walking towards his wife's house while holding a "red plastic gas can with the yellow nozzle." He then saw petitioner pour fluid from the gas can onto the front porch of the wife's house, after which he saw petitioner walk around to the rear of his wife's house.

Petitioner's wife also saw her husband pouring a liquid on the front porch of her home which seeped under her front door. Although she did not know what the fluid was, she smelled the odor of gasoline soon thereafter. Petitioner's wife's daughter (petitioner's "step-daughter") saw a shadowy figure on her mother's front porch whom she presumed to be petitioner. She then saw petitioner's face as he walked along the side of the house towards the back of the house. The step-daughter's boyfriend, Luke Martin, who was also in the house, saw petitioner's face and figure through the front window of the house and observed him pouring fluid on the front porch. Mr. Martin touched the fluid, smelled it, and determined it was gasoline.

After petitioner went around to the back of the house, his wife called 911. Shortly thereafter, at about 3:00 a.m., the wife saw the back of her house in flames. The wife, the step-daughter, and the step-daughter's boyfriend were able to escape the house without injury.

Patrolman J. J. Weaver was the first to respond to the scene. Once the fire was extinguished, Captain Kenneth Tyree of the Charleston Fire Department took a sample of burned wood from the back of the house to determine whether an accelerant had been used to start the fire. Captain Tyree also took pictures of the scene, among which was a picture showing the front of the house and a single gas can. After processing the gas can, Captain Tyree gave it to Detective J. Taylor of the Charleston Police Department who delivered it to the Charleston Police Department Criminal Investigation Division for analysis.

Petitioner was later arrested and charged with arson in the first degree in violation in of West Virginia Code § 61-3-1.

Petitioner's trial commenced on November 4, 2013. The State called petitioner's step-daughter. On cross-examination, the step-daughter testified that, at the scene of the fire, she saw a gas can in the front of the house and—several minutes later—saw a gas can at the back of the house. Specifically, she testified as follows:

Defense Counsel: Okay. So there were lights going on everywhere, there were a bunch of people?

Petitioner's Step-Daughter: Yes.

Defense Counsel: And they found a gas can; didn't they?

Petitioner's Step-Daughter: Yes.

Defense Counsel: Okay. They found one in the front of the house; right?

Petitioner's Step-Daughter: Yes.

Defense Counsel: And then you saw either a police officer or a firefighter find one in the back of the house?

Petitioner's Step-Daughter: Yes.

Fire Department Captain Tyree then testified that he processed the only gas can found at the scene. He described the gas can as intact, but rough in texture, which made any fingerprints on the can unobtainable. With regard to a sample of wood taken from the burned area at the back of the home, Captain Tyree ascertained that the fire was fast-burning and likely involved accelerants. Finally, Captain Tyree testified that, if he had found a second gas can, he would have taken it into evidence.

Police Detective Taylor also testified at petitioner's trial. He described the gas can as small, probably one or two gallons, and red. He noted that the texture was uneven and rigid and would not have retained a usable fingerprint. Detective Taylor claimed that there was only one gas can at the scene.

Forensic Chemist D. R. Gaskins of the West Virginia State Police Forensic Lab also testified. He verified Captain Tyree's assessment that an accelerant was used and that he found gasoline on the wood samples taken from the scene.

Near the end of petitioner's trial, defense counsel moved to dismiss petitioner's indictment for the State's failure to preserve the alleged second gas can. In the alternative, petitioner moved for a jury instruction regarding lost evidence.[1] Defense counsel argued that those investigating the crime were negligent in not finding or in not preserving the second gas can seen by petitioner's step-daughter. The defense argued that, if the second gas can had been tested for fingerprints, it could have provided exculpatory evidence, such as the fingerprints of a person other than petitioner.

In denying petitioner's motions, the circuit court first noted that the defense failed to ask petitioner's step-daughter to describe the two gas cans in an effort (1) to determine whether she saw two gas cans or one gas can two times, and (2) to develop any evidence regarding whether such a gas can could have produced usable fingerprints. The circuit court then found "that the police investigation was thorough, that they evaluated the site, [and] that no other gas can was located. . . ." The circuit court also said that the step-daughter's testimony did not persuade it "that there were in fact two cans [or] that an instruction regarding missing evidence [w]ould be appropriate in this case." However, the circuit court told defense counsel that he could argue "missing evidence" on closing.

On November 5, 2013, a jury found petitioner guilty of first degree arson. By order entered November 27, 2013, the circuit court sentenced petitioner to a determinate term of twenty years in prison. Petitioner now brings this appeal of his conviction on the ground that the circuit court erred in denying both his motion to dismiss his indictment for the State's failure to preserve evidence and his motion for a jury instruction regarding lost evidence.

---

[1] Petitioner proposed the following jury instruction: "'If you find that the State has lost, destroyed, or failed to preserve any evidence whose contents or quality are material to the issues in this case, then you may draw an inference unfavorable to the State, which in itself may create reasonable doubt as the defendant's guilt.' *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995); *Arizona v. Youngblood*, 488 U.S. 51[] (1988)."

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). Further,"[t]his Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*." Syl. Pt. 2, in part, *State v. Elswick*, 225 W.Va. 285, 693 S.E.2d 38 (2010). Finally, "[w]hether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard. In criminal cases where a conviction results, the evidence and any reasonable inferences are considered in the light most favorable to the prosecution." Syl. Pt. 12, *State v. Derr*, 192 W.Va. 165, 167, 451 S.E.2d 731, 733 (1994).

On appeal, petitioner argues that, given the evidence regarding the existence of a second gas can, the circuit court denied his right to a fair trial when it failed to dismiss petitioner's indictment and refused to give his "missing evidence" instruction.

We first address petitioner's claim that the circuit court erred in denying his motion to dismiss his indictment due to the State's failure to produce the second gas can. In such cases, we have said,

When the State *had or should have had* evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either West Virginia Rule of Criminal Procedure 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach.

Syl. Pt. 2, in part, *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995) (emphasis added). The evidence at petitioner's trial showed that the State never *had* possession of a second gas can. Therefore, pursuant to *Osakalumi,* we must first consider whether the State *should have had* possession of such a gas can.

At petitioner's trial, the individuals responsible for observing and processing the evidence at the scene of the fire—Patrolman Weaver, Captain Tyree, and Detective Taylor—all testified that they found only one gas can at the scene. Moreover, petitioner presented no evidence that the State lost, destroyed, or failed to preserve a second gas can. Instead, he presented only his step-daughter's testimony that she saw a single gas can in the front yard of her mother's house and, several minutes later, a single gas can in the back yard. Therefore, it was unclear whether she saw two gas cans or one gas can in two places. Petitioner could have clarified the issue by asking petitioner's step-daughter to describe the two cans. If those descriptions were in any way different, it would have supported petitioner's claim that there were, in fact, two cans. However,

4

without any additional information, petitioner's claim regarding the existence of a second gas can was, at best, speculative.

Even if a second gas can did exist, the loss of evidence that has only the potential to be exculpatory does not warrant the dismissal of an indictment. In this case, the alleged second gas can had only the potential to be exculpatory given that, like the first gas can, it could have been incapable of holding fingerprints. Furthermore, it is possible that a second gas can could have held evidence inculpating petitioner in the crime, such as his fingerprints or his DNA.

Assuming that a second gas can did exist and the State failed to find it, lost it, or destroyed it, the circuit court must determine the consequences to the State. The remainder of Syllabus Point 2 of *Osakalumi* provides the following:

> In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

194 W.Va. at 759, 461 S.E.2d at 505.

With regard to the first factor, petitioner provided no evidence at his trial that those investigating the crime exhibited a "degree of negligence or bad faith."

As for the second factor, the "probative value and reliability of secondary or substitute evidence that remains available" to the defense, the defense clearly had other means of exculpating petitioner, such as cross-examining the State's witnesses, putting on its own witnesses, and addressing the issue on closing. In fact, on closing, petitioner's counsel thrice raised the issue of the second missing gas can with the jury. During the first mention, petitioner's counsel reminded the jury of petitioner's step-daughter's testimony regarding seeing a gas can both at the front and the back of her mother's home on the day of the fire. Petitioner's counsel then said, "There were two gas cans on the scene, two gas cans that Officer Weaver, Detective Taylor, and Captain Tyree didn't know about. Wouldn't you guys like to know what happened to the second gas can?" During the second mention, petitioner's counsel said, "There's more than one gas can found at the scene. [Petitioner's step-daughter] saw an officer with a second gas can, and yet we have no idea where that second gas can is or whose fingerprints are on it. A crucial piece of evidence is missing. That's reasonable doubt." During the third mention, petitioner's counsel again asked the jury to consider possible missing evidence.[2]

---

[2] Petitioner raises an additional assignment of error in which he claims that the circuit court erred by invading the province of the jury and deciding that a second gas can did not exist. However, the record on appeal refutes petitioner's claim. The circuit court allowed the jury to hear petitioner's evidence regarding a second gas can and petitioner's counsel addressed the issue thrice on closing. As such, the jury was able to weigh the evidence regarding the alleged

With regard to the third and final factor, "the sufficiency of the other evidence produced at the trial to sustain the conviction [,]" the evidence against petitioner was overwhelming. No fewer than four eye-witnesses placed petitioner at his wife's home at the time of the fire. Moreover, all four testified to seeing petitioner pour a liquid over the home's front porch and three of these four smelled or touched the liquid and claimed that it was gasoline. Thereafter, three of the witnesses saw petitioner go around to the rear of the home and, soon after, saw the rear of the house in flames. An expert witness testified that a sample of the burned wood contained gasoline. Finally, one witness testified that petitioner had a cigarette lighter on his person that night and that petitioner said, "You don't mess with another man's wife. I'll burn the mother-f---er up."

Based upon our de novo review of the record on appeal and the reasoning above, we find that the circuit court did not err in denying petitioner's motion to dismiss his indictment for the State's alleged failure to produce a second gas can. Where there is no reasonable probability that the result of the proceedings would have been different had the missing evidence been available, there is no error in denying a defendant's motion to dismiss an indictment for the failure to preserve evidence. *See State v. Grimes*, 226 W.Va. 411, 418, 701 S.E.2d 449, 456 (2009) (applying *Osakalumi's* remedy test).

With regard to petitioner's claim that the circuit court erred in refusing to give the jury his "lost evidence" instruction, we have said, "Instructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syl. Pt. 4, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971). Based on our analysis above and considering the evidence and any reasonable inferences in the light most favorable to the prosecution, we find that the circuit court did not abuse it discretion in denying petitioner's "lost evidence" instruction because it was not supported by the evidence in this case. Specifically, petitioner failed to present sufficient evidence showing that the State lost, destroyed, or failed to preserve any material evidence in this case.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

second gas can during its deliberations. Therefore, given that the circuit court did not invade the province of the jury, we do not address this assignment of error further.

6